**TOM PETRUS & MILLER, LLLC**

RICHARD B. MILLER          3729-0
rmiller@tpm-hawaii.com
Telephone: (808) 792-5855
PATRICIA KEHAU WALL          3498-0
kwall@tpm-hawaii.com
Finance Factors Center
1164 Bishop Street, Suite 650
Honolulu, Hawaii 96813
Telephone: (808) 792-5800

Attorneys for Plaintiff
STATE FARM FIRE AND CASUALTY COMPANY

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 01 2007

at 9 o'clock and 50 min. A M.
SUE BEITIA, CLERK

LODGED

OCT 17 2007
10:22 AM
CLERK, U.S. DISTRICT COURT
DISTRICT OF HAWAII

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation<br><br>                    Plaintiff,<br><br>       vs.<br><br>METROPOLITAN MANAGEMENT, a Hawaii corporation,<br><br>                    Defendant. | CIVIL NO. CV07-00176 HG/KSC<br>(Declaratory Judgment)<br><br>PROPOSED FINDINGS AND RECOMMENDATION RE: PLAINTIFF STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR DEFAULT JUDGMENT<br><br>Hearing:<br>Date:   August 29, 2007<br>Time:   9:30 a.m.<br>Judge:  Hon. Kevin S.C. Chang<br><br>Trial date:  None |

**PROPOSED FINDINGS AND RECOMMENDATION
RE: PLAINTIFF STATE FARM FIRE AND
CASUALTY COMPANY'S MOTION FOR DEFAULT JUDGMENT**

I.    **INTRODUCTION**

Plaintiff State Farm Fire and Casualty Company's ("State Farm's") Motion

for Default Judgment came on for hearing on August 29, 2007.  Richard B. Miller,

Esq. appeared for State Farm.  Defendant Metropolitan Management

("Metropolitan") did not appear and did not file a Memorandum in Opposition or

Objection to the Motion.

For the reasons stated herein below, the Court finds that State Farm is

entitled to default judgment in its favor and recommends that the same be entered.

II.   **BACKGROUND**

A.    **Procedural Background**

The Complaint in the instant declaratory relief action was filed on March 30,

2007 and was served on Metropolitan on April 4, 2007.  As of the date of the filing

of State Farm's Motion, Metropolitan had not answered or otherwise pled in

response to State Farm's complaint. Pursuant to State Farm's request, the Clerk of

the Court entered default on May 7, 2007.

B.    **Factual Background**

1.    **The Underlying Lawsuit**

On June 6, 2006, the Association of Apartment Owners of Waiau Gardens

Kai, Unit G-1 (the "AOAO") filed its "Complaint for Damages and for Declaratory

and Injunctive Relief" against Metropolitan in the Circuit Court of the First Circuit,

State of Hawaii in an action entitled *AOAO Waiau Gardens Kai Unit G-1 vs. Metropolitan Management, et al.*, Civil No. 06-1-0975-06 (the "Underlying Lawsuit").

According to the Complaint, the AOAO administers the Waiau Gardens Kai Unit G-1 Condominium Protect (the "Project") located in Honolulu. On or about February 22, 2005, the AOAO entered into a contract with Metropolitan for the management of the Project. According to the AOAO, on May 12, 2006, it sent notice to Metropolitan that it was terminating the management contract effective June 16, 2006. The AOAO alleged that it decided to terminate the contract because of, among other things, Metropolitan's poor accounting records, payment of vendor invoices prior to commencement of work, excessive charges, failure to redo a flawed reserve study and a failure to keep accurate minutes of the AOAO's annual meeting.

According to the AOAO, Metropolitan ignored the notice of termination and replied, by letter dated May 15, 2006, that it intended to continue as managing agent for the Project until the contract's expiration in December 2006. By letter dated May 30, 2006, the AOAO allegedly reminded Metropolitan of its fiduciary duty to the AOAO and directed Metropolitan to turn all of the AOAO's records, documents and trust funds over to a new managing agent by June 2, 2006. The AOAO also directed Metropolitan not to make any further payments from the

AOAO's funds without the AOAO's prior written consent. The AOAO alleged in its complaint that Metropolitan had continued to ignore its request that it turn over all of the AOAO's records and funds, thus prompting the AOAO to bring the Underlying Lawsuit.

The AOAO asserted claims against Metropolitan for declaratory and injunctive relief (seeking a declaration that the AOAO was entitled to terminate the management contract and an order that Metropolitan turn over the AOAO's records and funds), breach of contract, breach of the duty of good faith and fair dealing and breach of fiduciary duty. In addition to declaratory and injunctive relief, the AOAO sought special and punitive damages in an amount to be determined at trial.

**B.     The Policies**

**1.     The Condo Policy**

The AOAO is the named insured under Condominium/Association Policy No. 91-13-5098-8 (the "Condo Policy") issued by State Farm. The Condo Policy was written on State Farm Policy Form FP-6109, which includes the following relevant insuring language:

> **SECTION II**
> **COMPREHENSIVE**
> **BUSINESS LIABILITY**
> **COVERAGE L -**
> **BUSINESS LIABILITY**

We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury**, **property damage**, **personal injury**, or **advertising injury** to which this insurance applies.  No other obligations or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.  This insurance applies only:

1.   to **bodily injury** or **property damage** caused by an **occurrence** which takes place in the **coverage territory** during the policy period;

2.   to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period.  The **occurrence** must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

3.   to **advertising injury** caused by an **occurrence** committed in the **coverage territory** during the policy period.  The **occurrence** must be committed in the course of advertising your goods, products or services.

**RIGHT AND DUTY
TO DEFEND**

We will have the right and duty to defend any claim or **suit** seeking damages payable under this policy even though the allegations of the **suit** may be groundless, false or fraudulent.  The amount we will pay for damages is limited as described in Limits of Insurance.  Damages because of **bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**.  We may investigate and settle any claim or **suit** at our discretion.  Our right and duty to defend end when we have used up the applicable limit of insurance in the

payment of judgments or settlements or medical expenses.

The Condo Policy also includes the following relevant exclusions applicable

to its Business Liability coverage:

**BUSINESS
LIABILITY
EXCLUSIONS**

Under Coverage L, this insurance does not apply:

1.    to **bodily injury** or **property damage**:

      a.    expected or intended from the standpoint of the insured; or

      b.    to any person or property which is the result of willful and malicious acts of the insured.

      This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property;

2.    to **bodily injury** or **property damage** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

      a.    assumed in a contract or agreement that is an **insured contract** provided the **bodily injury** or **property damage** occurs after the execution of the contract or agreement; or

      b.    that the insured would have in the absence of the contract or agreement;

....

10. to bodily **injury**, **property damage** or **personal injury** due to rendering or failure to render any professional services or treatments. This includes but is not limited to:

    a.    legal, accounting or advertising services;

    b.    engineering, drafting, surveying or architectural services, including preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

    c.    supervisory or inspection services ....

11. to **property damage** to:

    a.    property you own, rent or occupy

    ....

    d.    personal property in the care, custody or control of any insured;

16. to **personal injury** or **advertising injury**:

    ....

    d.    for which the insured has assumed liability in a contract or agreement. This part of this exclusion does not apply to liability for damages that the insured would have in the absence of a contract or agreement;

17. To **advertising injury** arising out of:

    a.    breach of contract other than misappropriation of advertising ideas under an implied contract[.]

The Condo Policy also includes the following relevant definitions:

**DEFINITIONS**

This section contains the definitions of the words printed in bold-face in Section II of this policy. It is an integral part of the policy. The definitions appearing below will be applied as if they were included each time the words they define are used in Section II of the policy.

When used in the provisions applicable to Section II of this policy (including endorsements forming a part of this policy):

1.    **advertising injury** means injury arising out of one or more of the following offenses:

    a.    oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.    oral or written publication of material that violates a person's right of privacy;

    c.    misappropriation of advertising ideas or style of doing business; or

    d.    infringement of copyright, title or slogan;

....

3.    **bodily injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from the **bodily injury**, sickness or disease at any time;

....

7.    **Insured contract** means:

8

....

  (5) That part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay damages because of **bodily injury** or **property damage** to a third person or organization if the contract or agreement is made prior to the **bodily injury** or **property damage**. Tort liability means liability that would be imposed by law in the absence of any contract or agreement.

....

11. **occurrence** means:

  a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in **bodily injury** or **property damage**; or

  b. the commission of an offense, or a series of similar or related offenses, which results in **personal injury** or **advertising injury**.

....

12. **personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

  a. false arrest, detention or imprisonment;

  b. malicious prosecution;

  c. wrongful eviction from, wrongful entry into or invasion of the right of private occupancy

of a room, dwelling or premises that a
person occupies, by or on behalf of its
owner, landlord or lessor;

d.    oral or written publication of material that
slanders or libels a person or organization or
disparages a person's or organization's
goods, products or services; or

e.    oral or written publication of material that
violates a person's right of privacy;

....

15.    **property damage** means:

a.    physical injury to or destruction of tangible
property, including all resulting loss of use
of that property.  All such loss of use will be
considered to occur at the time of the
physical injury that caused it; or

b.    loss of use of tangible property that is not
physically injured or destroyed, provided
such loss of use is caused by physical injury
to or destruction of other tangible property.
All such loss of use will be considered to
occur at the time of the **occurrence** that
caused it[.]

Finally, the Condo Policy contains the following relevant definition of who

is an "insured" for purposes of the liability coverage thereunder:

**SECTION II
DESIGNATION
OF INSURED**

**WHO IS
AN INSURED**

10

1.     If you are designated in the Declarations as:

       ....

       c.     An organization other than a partnership or
              joint venture, you are an insured.  Your
              executive officers, directors and trustees are
              insureds but only with respect to their duties
              as your officers, directors or trustees.   Your
              stockholders are also insureds but only with
              respect to their liability as stockholders.

2.     Each of the following is also an insured:

       ....

       b.     any person, other than your employee, or
              any organization while acting as your real
              estate manager

....

The AOAO is also the named insured under State Farm Commercial

Liability Umbrella Policy No. 91-12-4492-0 (the "CLUP").  The CLUP is written

on State Farm Form FP-8189, which includes the following relevant insuring

language:

## COVERAGE L - BUSINESS LIABILITY

If you are legally obligated to pay damages for:

1.     **bodily injury**;

2.     **personal injury**;

3.     **property damage**; or

4.     **advertising injury**,

11

to which this insurance applies, we will pay your **net loss** minus the **retained limit**. Our payment will not exceed the amounts shown in the **Declarations** for Coverage L - Business Liability.

This insurance applies only:

1.    to **bodily injury** or **property damage** caused by an **occurrence** which takes place in the **coverage territory** during the policy period;

2.    to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

3.    to **advertising injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must be committed in the course of advertising your goods, products or services.

## RIGHT AND DUTY TO DEFEND

1.    When **underlying insurance** or any other insurance does not apply to an **occurrence**:

If claim or **suit** is covered by this policy but not covered by any **underlying insurance** or any other insurance available to the insured, **we** will have the right and duty to defend any claim or **suit** seeking damages payable under this policy even though the allegations of the **suit** may be groundless, false or fraudulent. We may investigate and settle any claim or **suit** at our discretion. Our right and duty to defend end when we have used up the applicable limit of insurance in the payments of

judgments or settlements.  The cost of defense and investigation are in addition to the amount of the **net loss** payable.  If we are not permitted by law or otherwise to carry out the duties set forth above, **we** will pay the insured for any expense incurred with our written consent.

The insured must promptly reimburse us for any amount of **net loss** we pay on behalf of the insured within the **retained limit**.

2.     When underlying insurance applies to an occurrence:

    a.     This policy does not apply to:

        (1)     defense;

        (2)     investigation;

        (3)     settlement; or

        (4)     legal expenses;

        covered by the underlying insurance.

    ....

    c.     If the limits of the **underlying insurance** are exhausted by an **occurrence**, we will assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same **occurrence**. We will assume charge only when this policy applies and is immediately in excess of the **underlying insurance** without intervening excess insurance with another insurer.

13

The coverage afforded under the CLUP is subject to the following relevant exclusions:

### BUSINESS LIABILITY EXCLUSIONS

Under Coverage L - Business Liability, this insurance does not apply:

1.     to **bodily injury** or **property damage**:

     a.     expected or intended from the standpoint of the insured; or

     b.     to any person or property which is the result of willful and malicious acts of the insured.

....

2.     to **bodily injury** or **property damage** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply if the **underlying insurance** provides coverage for the loss;

....

11.     to **property damage** to:

     a.     property you own[.]

....

15.     to **personal injury** unless the **underlying insurance** provides coverage for the loss;

....

The CLUP also includes the following relevant definitions:

14

## DEFINITIONS

The words "you" and "your" mean the person or organization shown as the named insured in the **Declarations**. The words "we", "us" and "our" mean the Company shown in the **Declarations**.

This section contains the definitions of words printed in bold face. It is an integral part of the policy. The definitions appearing below will be applied as if they were included each time the words they define are used in this policy.

When used in this policy (including endorsements forming a part of this policy):

1.    **advertising injury** means injury arising out of one or more of the following offenses:

      a.    oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      b.    oral or written publication of material that violates a person's right of privacy;

      c.    misappropriation of advertising ideas or style of doing business; or

      d.    Infringement of copyright, title or slogan;

....

3.    **bodily injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from the **bodily injury**, sickness or disease at any time;

....

10.    **occurrence** means:

a.  an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in **bodily injury** or **property damage**; or

b.  the commission of an offense, or a series of similar or related offenses, which results in **personal injury** or **advertising injury**.

....

11.  **personal injury** means injury other than **bodily injury**, arising out of one or more of the following offenses:

a.  false arrest, detention or imprisonment;

b.  malicious prosecution;

c.  wrongful eviction from, wrongful entry into, or invasion of the right to private occupancy of a room, dwelling, or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

d.  oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e.  oral or written publication of material that violates a person's right of privacy;

....

14.  **property damage** means:

a.  physical injury to or destruction of tangible property, including all resulting loss of use

of that property.  All such loss of use will be
considered to occur at the time of the
physical injury that caused it; or

b.      loss of use of tangible property that is not
physically injured or destroyed, provided
such loss of use is caused by physical injury
to or destruction of other tangible property.
All such loss of use will be considered to
occur at the time of the **occurrence** that
caused it[.]

The CLUP defines an "insured," in relevant part, as follows:

**DESIGNATION OF INSURED**

**WHO IS AN INSURED**

1.      If you are designated in the **Declarations** as:

c.      an organization other than a partnership or
joint venture, you are an insured.  Your
executive officers, directors and trustees are
insureds but only with respect to their duties
as your officers, directors or trustees.   Your
stockholders are also insureds but only with
respect to their liability as stockholders;

....

2.      Each of the following is also an insured:
a.      your employees and any person or
organization acting as your real estate
manager while acting within the scope of
their employment by you.

....

d.      any person or organization for whom you
have agreed to provide insurance such as is
afforded by this policy.  Such agreement

must be in the form of a written contract.
This applies only with respect to:

(1)     operations you perform;

(2)     facilities you own or use; or

(3)     the underlying limit applicable to your
        insurance with respect to such
        operation or facility;

e.     any other person or organization who is
       insured under any policy of **underlying
       insurance**.  The coverage of such insureds
       under this policy is subject to all the
       coverage limitations found in that
       **underlying insurance** other than the limits
       of insurance[.]

## C.     The Tender

Metropolitan tendered defense of the Underlying Lawsuit to State Farm

under the Condo Policy and the CLUP.  State Farm provided a defense to

Metropolitan pursuant to a reservation of rights.

## III.   DISCUSSION

### A.     Standard of Review

Fed. R. Civ. P. 55(a) provides as follows:

**(a) Entry.** When a party against whom a judgment for
affirmative relief is sought has failed to plead or
otherwise defend as provided by these rules and that fact
is made to appear by affidavit or otherwise, the clerk
shall enter the party's default.

Fed. R. Civ. P. 55(b) provides, in relevant part, that "[i]n all other cases the party entitled to a judgment by default shall apply to the court therefor."

State law governs the resolution of substantive issues in this diversity action. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001). Under Hawaii law, construction of a contract–including an insurance policy–is a question of law for the court. *See National Union Fire Ins. Co. v. Reynolds*, 77 Haw. 490, 494, 889 P.2d 67, 71 (Haw. App. 1995);  *Cho Mark Oriental Food  v. K & K International*, 73 Haw. 509, 519, 836 P.2d 1057, 1064 (1992).  Thus, entry of judgment for an insurer is appropriate when the court determines, as a matter of law, that the terms of an insurance policy do not provide coverage.  *See Crawley v. State Farm Mutual Automobile Ins. Co.*, 90 Haw. 478, 482, 979 P.2d 74, 78 (Haw. App. 1999); *Foote v. Royal Ins. Co. of America*, 88 Haw. 122, 126, 962 P.2d 1004, 1008 (1998).

### B.    General Rules Applicable to Insurance Coverage Matters

Insurance policies are subject to the general rules of contract construction. The terms of insurance policies must be interpreted according to their plain, ordinary and accepted sense in common speech, unless it appears from the language of the policies that a different meaning is intended. *Dawes v. First Ins. Co. of Hawaii*, 77 Haw. 117, 121, 883 P.2d 38, 42 (Haw. 1994), *reconsideration denied*, 889 P.2d 66 (Haw. 1994).  A court cannot rewrite an insurance contract

between the parties. *Fortune v. Wong*, 68 Haw. 1, 11, 702 P.2d 299, 306 (Haw. 1985). Furthermore, a court must respect the plain terms of a policy and "not create ambiguity where none exists." *Sentinel Ins. Co. v. First Ins. Co. of Hawaii*, 76 Haw. 277, 298, 875 P.2d 894, 915 (Haw. 1994).

The insured has the burden of establishing coverage under an insurance policy. *Sentinel*, 76 Haw. at 291 n.13, 875 P.2d at 909 n.13. The insurer has the burden of establishing the applicability of an exclusion. *Sentinel*, 76 Haw. at 287, 875 P.2d at 914.

An insurer's duty to defend is contractual in nature. *Commerce & Indus. Ins. Co. v. Bank of Hawaii*, 73 Haw. 322, 325, 832 P.2d 733, 735 (Haw. 1992). The duty to defend arises whenever there is a potential for coverage, and thus does not depend on whether liability is ultimately established. Where one or more claims asserted in a lawsuit raise a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire lawsuit, even though other claims asserted in the suit might fall outside the Policy's coverage. *First Ins. Co. of Hawaii v. State*, 66 Haw. 413, 417, 665 P.2d 648, 652 (Haw. 1983). Conversely, where the pleadings fail to allege any basis for recovery within the coverage of the subject policy, the insurer has no obligation to defend. *Hawaiian Holiday Macadamia Nut Co. v. Indust. Indem. Co.*, 76 Haw. 166, 169, 872 P.2d 230, 233 (Haw. 1994).

Under the "complaint allegation rule," the duty to defend is determined at the time that the defense is tendered to the insurer or the insurer otherwise is on notice that a complaint has been filed against its insured. *See, e.g., Dairy Road Partners v. Island Insurance Co. Ltd.*, 92 Haw. 398, 413, 992 P.2d 93, 108-16 (2000); *Commerce & Indus. Ins. Co.*, 73 Haw. at 326, 832 P.2d at 735 (1992). The allegations of the complaint in the underlying lawsuit dictate whether or not an insurer has a duty to defend. However, in determining whether coverage exists under a liability policy, Hawaii courts do not look merely at the label that a litigant places on his claim, but at the underlying *facts* alleged in the pleadings. *See Bayudan v. Tradewind Ins. Co.*, 87 Haw. 379, 387, 957 P.2d 1061, 1069 (Haw.App. 1998).

Although ambiguities in an insurance policy are construed against the insurer, the Hawaii Supreme Court has made clear that this rule does *not* come into play merely because the insured and insurer disagree about certain terms contained in the underlying policy, or simply because an insured may claim ambiguity. *Oahu Transit Services, Inc. v. Northfield Ins. Co.*, 107 Haw. 231, 236, n.7, 112 P.3d 717, 722 n.7 (Haw. 2005). Rather, an "[a]mbiguity exists and the rule is followed only when the [policy] taken as a whole, is reasonably subject to differing interpretation. Absent an ambiguity, the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech . . . ."

*Id.*, 107 Haw. at  236, n.7,  112 P.3d at 722 n.7 (quoting *Hawaiian Ins. & Guar. Co. v. Chief Clerk of First Circuit Court*, 68 Haw. 336, 341-42, 713 P.2d 427, 431 (1986)); *see also  Sentinel Ins. Co. v. First Ins. Co. of Hawaii*, 76 Haw. 277, 298, 875 P.2d 894 (Haw. 1994) (a court must "not create ambiguity where none exists").

### C.   The Claims Asserted by the AOAO Against Metropolitan are Not for "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" Caused by an "Occurrence" Within the Coverage of the Policies

Metropolitan is not a named insured under either the Condo Policy or the CLUP.  It is apparently claiming insured status either on the basis of an indemnity provision in its previous management agreement with the AOAO or under policy provisions extending insured status to the named insured's "real estate manager" or (with respect to the CLUP) to "any person or organization for whom you have agreed to provide insurance such as is afforded by this policy."  State Farm does not concede that Metropolitan is an insured under either policy, and, in fact, Metropolitan has made no showing that it is.   However, even assuming, *arguendo*, that Metropolitan could make such a showing, for the reasons discussed below, the Court finds that there would be no coverage under the policies for the claims asserted against Metropolitan in the Underlying Lawsuit.

### 1.   The AOAO Does Not Allege "Bodily Injury"

Both policies define "bodily injury," in relevant part, as "bodily injury, sickness or disease." The AOAO, a non-profit corporation, does not allege any physical injury, or bodily harm, to any person as a result of Metropolitan's alleged conduct. Accordingly, the Underlying Lawsuit does not involve a claim for "bodily injury."

### 2.   The AOAO Does Not Allege "Property Damage"

Both policies define "property damage," in relevant part, as "physical injury to or destruction of tangible property, including all resulting loss of use of that property." Additionally, "property damage" is defined to include "the loss of use of tangible property that is not physically injured or destroyed, *provided such loss of use is caused by physical injury to or destruction of other tangible property*. Thus, whether a claim is for the actual destruction of tangible property, or for the loss of use of the property, "physical injury" to some tangible property is a necessary prerequisite to coverage. The AOAO does not allege physical injury to *any* tangible property. Rather, it alleges that Metropolitan breached fiduciary and other duties by rejecting the AOAO's effort to terminate the management contract and refusing to turn over the AOAO's records and funds, thus causing the AOAO pecuniary, or economic, losses.

Purely economic losses, unaccompanied by physical injury to tangible property or loss of use of that property, do not constitute "property damage" within the meaning of a liability policy. *See, e.g., Hawaiian Ins. & Guar. Co. v. Blair*, 6 Haw.App. 447, 726 P.2d 1310 (Haw.App. 1986) (by alleging that insured's importation of fake products had resulted in "diminution in value" of plaintiff's "product line," plaintiff did not allege "loss of use of tangible property" within meaning of "property damage" under insured's CGL policy); *Giddings v. Industrial Indemnity Co.*, 169 Cal.Rptr. 278, 280 (Cal.App. 1980) (strictly economic losses, like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property.); *Allstate Ins. Co. v. Russo*, 829 F.Supp. 24, 27 (D.R.I. 1993) (addressing issue of economic losses in context of homeowner's policy); *Fisher v. Fitchburg Mut. Ins. Co.*, 560 A.2d 630 (N.H. 1989) (damage to prospective home buyers' inchoate property interests after insureds reneged on purchase and sale agreement did not constitute "property damage" within the meaning of insureds' homeowners' policy).

Moreover, courts have generally held that a claim for conversion, or the unauthorized exercise of control over another person's property (e.g. the AOAO's claim for Metropolitan's alleged refusal to turn over the AOAO's records and funds), is not a claim for "property damage" under an insurance policy that defines

"property damage" as physical injury to or destruction of tangible property. *See,*

*e.g., Johnson v. Amica Mut. Ins. Co.,* 733 A.2d 977 (Me. 1999) (bank account

funds were "intangible property," rather than "tangible property," and, thus,

insureds' alleged conversion of the funds was not "property damage" within the

meaning of the liability coverage of a homeowners' insurance policy); *Dynamic*

*Concepts, Inc. v. Truck Ins. Exch.,* 71 Cal.Rptr.2d 882 (Cal.App. 1998)

(distributor's cause of action against insured computer software company entitled

"Conversion (Replevin)," in which distributor claimed insured used false pretext to

obtain computers owned by distributor's customers, did not allege "property

damage" covered under insured's CGL policy, where distributor was seeking

purely economic losses flowing from customers' loss of use of their property).

Likewise, economic losses resulting from a breach of fiduciary duty, as alleged in

this case, generally do not constitute "property damage" within the meaning of a

liability policy. *See, e.g., Coulter v. Cigna Property & Cas. Cos.,* 934 F.Supp.

1101 (N.D. Iowa 1996) (alleged economic loss and diminution of value of assets of

testators' estates as result of insured executor's alleged breach of fiduciary duties

were not "property damage" and were outside coverage of homeowners' liability

insurance policy which defined "property damage" as physical damage or

destruction to tangible property, including the loss of use of that property);

*Potomac Ins. Co. of Illinois v. Peppers,* 890 F.Supp. 634 (S.D. Tex. 1995)

(economic damage from putative insured's alleged breach of fiduciary duty as officer and director and equal shareholder with alleged victim was not "property damage" and, therefore, was not covered by CGL policy).

Because the AOAO has not alleged any physical injury to *tangible* property, its claims are not for "property damage" within the meaning of the Policy.

### 3.    The AOAO Does Not Allege an "Occurrence"

Both policies provide coverage for damages for "bodily injury" or "property damage" only when caused by an "occurrence." The policies define an "occurrence," in relevant part, as an "accident." In determining whether a claim arises from an "accident" within the coverage of a liability insurance policy, Hawaii courts view the facts underlying the claim objectively, from the *standpoint of the insured. Hawaiian Holiday Macadamia Nut Co., Inc. v. Industrial Indem. Co.*, 76 Haw. 166, 170, 872 P.2d 230, 234 (Haw. 1994) Thus, "[I]f the insured did something or ... failed to do something, and the insured's expected result of the act of omission was the injury, then the injury was not caused by an accident and therefore not ... within the coverage of the policy ...." *Id.*

The acts by Metropolitan about which the AOAO complains were not in any way accidental. Rather, the Complaint in the Underlying Lawsuit alleges that Metropolitan *intentionally* refused to turn over its records and funds in response to the AOAO's repeated demands. The injury claimed by the AOAO, i.e., the

interference with its right to possession of these records and funds, was necessarily the "expected result" of Metropolitan's alleged acts.

### 4. The AOAO Does not Allege "Personal Injury"

Both policies define "personal injury," in relevant part, as: false arrest, detention or imprisonment; malicious prosecution; wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor; oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or oral or written publication of material that violates a person's right of privacy. None of the allegations in the Underlying Lawsuit involve any of these "dignitary torts." Accordingly, the policies' coverage for "personal injury" is not implicated.

### 5. The AOAO Does Not Allege "Advertising Injury"

Both policies also afford coverage for "advertising injury," which is defined, in relevant part, as the slandering, libeling or disparaging of a person's goods, services, or business; the publication of material that invades a person's privacy; the misappropriation of advertising ideas; or infringement. To be covered, such "advertising injury" must occur in the course of advertising the insured's products or services. There are no allegations in the Underlying Lawsuit involving

advertising by Metropolitan. Accordingly, this coverage is not relevant to the instant analysis.

### D.   There is No Coverage for Declaratory and Injunctive Relief

The AOAO also seeks declaratory and injunctive relief. Equitable relief, in the form of an injunction or otherwise, does not constitute "damages" within the meaning of an insurance policy providing liability coverage. *See, e.g., Shower Spa v. ITT Hartford Ins. Group*, 2002 WL 1814929 (Cal.App. 4 Dist. Aug 07, 2002) (inventor's claims for equitable and declaratory relief did not state claim for damages under liability policy); *Jones v. Farm Bureau Mut. Ins. Co.*, 431 N.W.2d 242, 245 (Mich.App. 1988) (insurer under farm owner's policy had no duty to defend insured in underlying nuisance action seeking only mandatory injunction). Accordingly, there is no coverage for these claims.

### E.   Applicable Exclusions

### 1.   Intentional Acts

Both policies exclude coverage for "bodily injury" or "property damage" "expected or intended from the standpoint of the insured" or which "is the result of willful and malicious acts of the insured."

As discussed above in relation to whether the AOAO's claims arise from an "occurrence" within the meaning of the Policy, the allegations in the Complaint describe wholly *intentional*, rather than negligent, conduct. Although the AOAO

28

has alleged neither "bodily injury" nor "property damage" within the meaning of the policies, if it had, the injury alleged, i.e., the loss of use and/or access to the AOAO's records and funds, is such as would necessarily have been expected by Metropolitan when it knowingly withheld those records and funds. *See, e.g., Jim Barna Log Systems Midwest, Inc. v. Gen. Cas. Ins. Co. of Wisconsin*, 791 N.E.2d 816 (Ind.App. 2003) (alleged conversion by log home seller and agent fell under the "expected or intended injury" exclusion of seller's CGL policy); *Butler & Binion v. Hartford Lloyd's Ins. Co.*, 957 S.W.2d 566 (Tex.App. 1995) (claims of expelled partner against insured law firm for breach of contract and of fiduciary duty were allegations of intentional or willful actions, barred from coverage under commercial general liability policy exclusion for bodily injury expected or intended from standpoint of insured).

## 2.   **Contractual Liability**

Both policies exclude coverage for liability "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." All of the AOAO's claims arise, if at all, from Metropolitan's performance or nonperformance of its obligations under its management contract with the AOAO. Accordingly, coverage for the claims is barred under the policies. *See CIM Ins. Corp. v. Midpac Auto Center, Inc.,* 108 F.Supp.2d 1092 (D. Haw. 2000) (coverage for claim for breach of employment and shareholder agreements

29

precluded under CGL policy exclusion for liability arising under contract); *CIM Ins. Corp. v. Masamitsu*, 74 F.Supp.2d 975 (D.Haw.1999) (contract and related promissory estoppel claims brought against insured management group by rival executive group were within exclusion in liability insurance policy for "liability assumed under any contract or agreement").

### 3.   <u>Property Owned by an Insured</u>

Both policies exclude coverage for "property damage" to "property you own." The Condo Policy also excludes coverage for "property damage" to "personal property in the care, custody or control of any insured." The Condo Policy defines "you" to include the named insured "and any other person or organization qualifying as a Named Insured under this policy." The CLUP defines "you" as "the person or organization shown as the named insured in the Declarations."

Although the AOAO has not alleged any "property damage" within the meaning of the policies, even if it had, the property in question would necessarily be owned by the AOAO, i.e., the named insured under both policies. The property in question was also in the "care, custody or control" of Metropolitan. Clearly, the purpose of an exclusion such as the owned property exclusion here is to prevent liability coverage designed to protect an insured form third-party claims from being turned into first-party property coverage for losses to the insured's own

property. Accordingly, the exclusion precludes coverage for the claims asserted by the AOAO.

### E.   There is No Coverage for Punitive Damages

The AOAO seeks punitive damages against Metropolitan. Under Hawaii law, "[c]overage under any policy of insurance issued in [Hawaii] shall not be construed to provide coverage for punitive or exemplary damages unless specifically included." Haw.Rev.Stat. § 431:10-240. Neither the Condo Policy nor the CLUP specifically includes coverage for punitive damages. Accordingly, as a matter of law, State Farm is not responsible for any punitive damages which may be awarded against the insureds. *See Allstate Ins. Co. v. Takeda*, 243 F.Supp.2d 1100, 1109 (D. Hawaii 2003).

## IV.   RECOMMENDATION

Based on the foregoing, the Court recommends that State Farm's Motion for Default Judgment be GRANTED.

DATED:   Honolulu, Hawaii, _____ OCT 3 1 2007 _____.


_____
United States Magistrate Judge